# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DIVISION

| | |
|---|---|
| **JARRET JAY BOUS,** §<br>*Plaintiff* §<br> §<br> §<br>**v.** §<br> §<br> §<br>**WILEY MCAFEE, JACK** §<br>**SCHUMACHER, ADAM ACOSTA,** §<br>**BLANCO COUNTY,** §<br>*Defendants.* §<br> § | **No.  1:22-CV-0702-LY** |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Blanco County's Motion to Dismiss, Dkt. 9; Defendants Wiley McAfee and Adam Schumacher's Motion for Judgment on the Pleadings, Dkt. 16; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.      BACKGROUND

Plaintiff Jarret Jay Bous initiated this lawsuit following his arrest and jailing for a crime he alleges he did not commit. Dkt. 1, at 1. On July 8, 2020, a decomposing body was found on Bous's ten-acre property where he operates a business renting residential units. *Id.* at 3. The deceased, who was later identified as James Robert Poole, died of an apparent gunshot wound. *Id.* On July 17, 2020, Blanco County Judge Brett Bray issued an arrest warrant for Bous related to Poole's death

1

based on a probable cause affidavit prepared by Blanco County Deputy Sheriff Adam Acosta. *Id.* at 2-3. The probable cause affidavit stated that Poole was determined to have died on or around July 4, 2020, the same day Bous apparently left town. *Id.* at 4. The affidavit stated that "neighbors [Acosta] visited with said it was odd for Bous to leave without telling people in the neighborhood. He was usually seen in and around his residence working on various projects and to leave suddenly seemed strange to them." *Id.*

Bous was arrested on July 23, 2020, while visiting family in Minnesota, and held at the Blanco County Jail without bond. *Id.* at 3-4. Bous's bond was later set at $3 million, at the urging of District Attorney Wiley McAfee based on "evidence largely supplied by [DA Investigator Jack] Schumacher and Acosta." *Id.* at 4. The charges against Bous were eventually dismissed on February 7, 2021, allegedly without any grounds for dismissal stated. *Id.* Bous was incarcerated for approximately 8 months. *Id.*

Bous bases his claims on Defendants' conduct both prior to and after his arrest. *Id.* at 4. Bous claims that McAfee, Acosta, and Schumacher had access to information that contradicted Acosta's probable cause affidavit and that generally tended to exonerate Bous. *Id.* at 4-6.  Specifically, they had access to witness statements that suggested that Poole was alive "at least into the afternoon of July 4th and likely on July 5th" as well as license plate reader data that showed Bous was out of the area from the early morning hours of July 4, 2020, and did not return to the area until July 19, 2020. *Id.* at 6-9. Bous states that his cell phone records also confirmed that

2

he was in Kansas on July 4, 2020, and July 5, 2020, at a time when Poole was seen alive in and around the area in Johnson City where his body was found. *Id.* at 9.

Bous also alleges that McAfee, Acosta, and Schumacher knew that Bous told witness Genelle McClatchy and her husband in advance that he planned to leave on July 4, 2020. *Id.* On July 10, 2020, McClatchy told Acosta and Schumacher that in June, Bous left several deposit slips with her husband so that he could deposit rent into Bous' account while he was out of town, and that on another occasion Bous told McClatchy's husband that he would be leaving town care for his sick mother. *Id.* Bous states that the witness statements concerning sightings of Poole, access to the license plate reader data, and witness statements concerning advance knowledge of Bous's pre-planned trip all predate the Defendants' pursuit of an arrest warrant on July 17, 2020. Dkt. 6-9. Bous states that this critical information was not shared with Judge Bray who issued the arrest warrant. *Id.*

Bous brings claims under 42 U.S.C. § 1983 against McAfee, Acosta, and Schumacher for material omissions, bad faith failure to investigate, and presentation of false testimony/evidence leading to his false arrest and imprisonment in violation of his rights under the Fourth and Fourteenth Amendments. *Id.* at 10-11. Bous also brings a conspiracy claim under 42 U.S.C. § 1983 alleging that McAfee, Acosta, and Schumacher conspired to violate his civil rights, depriving him of "rights privileges, and/or immunities guaranteed to him by the United States Constitution, including due process, equal protection under the law, and unlawful search and seizures." *Id.* at 12. Lastly, Bous brings claims for bystander liability to the extent any of the

defendants assert that their individual actions did not violate Bous's rights. *Id.* Bous asserts that each of the defendants: "(1) knew that the other was violating rights, privileges, and/or immunities guaranteed by the United States Constitution; (2) had a reasonable opportunity to prevent harm to Plaintiff; (3) and chose not to act." *Id.* at 13.

Bous also seeks to hold Blanco County liable under § 1983 pursuant to the holding in *Monell* v. *Department of Social Services of the City of New York,* 436 U.S. 658 (1978), alleging inadequate training and disciplinary policies, and customs or practices including: "(1) the use of false evidence to support the indictment, arrest, and prosecution of individuals; (2) the use of improper witness interview techniques; (3) failure to pursue investigative leads that would result in exculpatory evidence; (4) fabrication of evidence; and (5) participation by policymakers in conspiracies to interfere with an individual's constitutional rights." *Id.* at 14. Bous's failure-to-train claim further alleges that Blanco County failed to train and supervise McAfee "who was responsible for criminal prosecutions generally and also *de facto* in charge of criminal investigations in Blanco County" and "Schumacher and Acosta, who were responsible for criminal investigations and prosecutions" in "proper ethical techniques in conducting criminal investigations and prosecutions." *Id.* at 16. Bous seeks recovery for damages and injuries including past and future medical expenses, loss of income and/or earning capacity, physical impairment, damage to reputation and name, physical pain and suffering, and emotional distress and mental anguish. *Id.*

Blanco County moves to dismiss Bous's claims under Federal Rule of Civil Procedure 12(b)(6) on the basis that Bous has not identified an appropriate policymaker for the purposes of his *Monell* claim, the policy identified by Bous is based on conclusory allegations unsupported by any written policies, and Bous has not demonstrated any practice or custom was promulgated with deliberate indifference. Dkt. 9, at 7-9. As to Bous's failure-to-train claim, Blanco County states that Bous has not identified a specific pattern of violations that would have put Blanco County on notice that different training/supervision was needed, has not alleged specific facts about the County's allegedly inadequate training and supervision practices, nor explained how those inadequacies were the moving force behind Bous' injuries. *Id.* at 9.

Defendants DA McAfee, DA Investigator Schumacher, and Blanco County Sheriff's Department Sergeant Adam Acosta[1] move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Dkt. 16, at 1. The individual defendants argue that all of Bous's claims stem from the alleged wrongful prosecution of Bous and that McAfee and Schumacher are entitled to prosecutorial immunity. *Id.* at 3. Schumacher and Acosta additionally assert immunity as a witness providing testimony. *Id.* The undersigned addresses the parties' arguments below.

---

[1] Bous sues these three defendants in their individual capacity. *See* Dkt. 1. The individual defendants style their motion for judgment on the pleadings as "Defendants Wiley McAfee and Jack Schumacher's Motion for Judgment on the Pleadings." Dkt. 16. But in footnote 2 of the motion, it notes that Acosta joins the motion to assert immunity for any testimony he gave. *Id.* at 3, n.2.

## II.    LEGAL STANDARDS

### A.    12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### B.     12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In a motion for a judgment on the pleadings "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst.*, Inc., 278 F.3d 417, 420 (5th Cir. 2001). Such a motion "is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.* (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998)).

Moreover, in ruling on a motion for judgment on the pleadings, "the district court is confined to the pleadings and must accept all allegations contained therein as true." *Hughes*, 278 F.3d at 420 (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*,

937 F.2d 274, 279 (5th Cir. 1991)). In considering Rule 12(c) motions, the court relies on the same standard as that of a Rule 12(b)(6) motion. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker,* 75 F.3d at 196.

### III.    DISCUSSION

### A.    Blanco County's Motion to Dismiss

1.    *Monell* Claim

Bous seeks to hold Blanco County liable under *Monell* on the grounds that Blanco County created or maintained various investigative practices and policies with deliberate indifference, that caused the individual defendants named in this suit to violate Bous's constitutional rights resulting in his false arrest and imprisonment. 436 U.S. at 658; Dkt. 1, at 14. Blanco County moves to dismiss arguing that Bous has not pleaded facts supporting the essential elements of his *Monell* claim, including identifying a policymaker and policy, and establishing that the policy was set forth with deliberate indifference. Dkt. 9, at 7-9.

To prevail on his *Monell* claim, Bous must show that: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Pena v. City of Rio Grande City*, 879 F.3d 613, 621

(5th Cir. 2018). "*Monell* plaintiffs [must] establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)); *see also id.* (observing that "where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability"). "In short, a plaintiff must identify the policy, connect the policy to the governmental entity itself, demonstrate deliberate indifference on the part of the policymaker in promulgating the policy, and show that his injury was incurred because of the application of that specific policy." *Cole v. Hunter*, 497 F. Supp. 3d 172, 184 (N.D. Tex. 2020) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)).

An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). "To find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (internal citations omitted). A plausible pattern "requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Hicks-Fields v. Harris Cnty.,*

*Tex.*, 860 F.3d 803, 810 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)) (cleaned up).

As for specificity, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Pena*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). While no set number of incidents is necessary to establish a pattern, "[w]here the violations are flagrant or severe," a shorter pattern of conduct can demonstrate that "diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

The policies identified by Bous include: "(1) the use of false evidence to support the indictment, arrest, and prosecution of individuals; (2) use of improper witness interview techniques; (3) failure to pursue investigative leads that would result in exculpatory evidence; (4) fabrication of evidence; and (5) participation by policymakers in conspiracies to interfere with an individual's constitutional rights." Dkt. 1 at 14. Blanco County argues that Bous has pleaded mere conclusory allegations of policies, has not identified any written policies at issue, and has not identified a specific pattern of violations or conduct of alleged wrongful arrest or alleged evidence mishandling. Dkt. 9, at 8-9. Because Bous has not alleged the existence of a written policy to establish the policy prong of his *Monell* claim, he is required to allege a pattern that allows the inference that Blanco County is liable for a practice that is

common and well settled enough so as to constitute a custom that rises to the level of municipal policy. The undersigned finds that Bous has not done so.

The undersigned acknowledges that "the procedural posture of this case is distinguishable from much of the case law on establishing a pattern." *Oporto v. City of El Paso*, No. EP-10-CV-110, 2010 WL 3503457, at *6 (W.D. Tex. Sept. 2, 2010). [2] At the motion-to-dismiss stage, a more general articulation of a pattern constituting a policy may suffice since the "the Court must only evaluate whether Plaintiffs pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Id.* (cleaned up).[3]

At a minimum, Bous must plead sufficient facts to allow the undersigned to infer that there is more than once instance in which Blanco County has acted in accordance with the alleged policies. *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016 (1985) ("isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy.").

---

[2] *E.g.*, *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 850-52 (5th Cir. 2009) (upholding district court's summary judgment ruling that 27 complaints of excessive force on which plaintiff relied were sufficient to establish a pattern of excessive force amounting to official policy); *Pineda v. City of Houston,* 291 F.3d 325 (5th Cir. 2002) (reviewing district court's summary judgment ruling and finding that 11 incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry amounting to a policy or custom).

[3] *See also, e.g.*, *Reyes v. City of Austin, Inc.*, No. 1:21-CV-00992-LY-SH, 2022 WL 789333, at *4 (W.D. Tex. Mar. 15, 2022) (allegations of "about 10 [or] so" arrests of individuals who filmed policy activity sufficiently pleaded a practice or custom); *Myart v. City of San Antonio*, No. SA-06-CA-0256 FB(NN), 2007 WL 26805, at *2 (W.D. Tex. Jan. 3, 2007) (specifically identifying an allegedly unlawful policy in the form of a "persistent and widespread" practice of brutal conduct by officers was sufficient to survive motion to dismiss).

Parsing through the pleadings in *Myart v. City of San Antonio* is instructive. No. SA-06-CA-0256 FB(NN), 2007 WL 26805, at *2. In that case, the plaintiff alleged that the City: "instituted policies which created a climate in which the type of violent and abusive behavior exhibited by [the defendant] was allowed to occur"; "ratifie[d] and approve[d] such violent behavior by its police department by failing to take appropriate disciplinary measures and by ignoring abusive conduct on the part of its police officers, *both prior to the event made the basis of this suit and thereafter.*" *Id.* (emphasis added). The plaintiff further alleged that the City's official policy "in authorizing, ratifying and/or approving such brutal conduct of its officers, is a *persistent and widespread practice of city officials and/or employees and is so common as to constitute a custom* that fairly represents municipal policy of the City...." *Id.* (emphasis added). Thus, even though the plaintiff did not allege specific instances of misconduct, the pleadings allowed the court to infer that generally, there were prior and subsequent incidents such that the City's violative practices were persistent and widespread enough to constitute a City custom or policy.

Bous has not met this most lenient of standards for showing a pattern constituting a policy. His complaint appears to allege one incident demonstrating the policies at issue—the incident that is the basis of his suit. He has not pleaded the existence of prior or subsequent incidents, nor has he alleged that the prohibited conduct is so persistent and widespread as to constitute a Blanco County policy. Based on the pleadings, the undersigned cannot infer that the conduct alleged by

Bous rises to the level of a Blanco County policy, custom, or practice for the purposes of his *Monell* claim.

Because Bous has failed to meet the first element of his *Monell* claim the undersigned need not substantively reach the parties' arguments concerning whether DA McAfee can be considered a policymaker, nor whether Bous has adequately demonstrated that the policies at issue were the moving force behind his false arrest and imprisonment. Based on the foregoing, the undersigned recommends that the District Court grant Blanco County's motion to dismiss, Dkt. 9, with respect to Bous's claims regarding Blanco County's unconstitutional policies, customs, or practices.

2.    Failure to train claim

Bous asserts a failure-to-train claim, arguing that Blanco County failed to train and/or supervise DA McAfee, Schumacher, and Acosta, in "proper and ethical techniques in conducting criminal investigations and prosecutions." Dkt. 1, at 15. Further, Bous alleges that Blanco County was aware Acosta had "resigned in lieu of termination" for violations of policy at his previous job as a police officer for the Austin Independent School District. *Id.* Blanco County moves to dismiss this claim on the grounds that Bous does not identify a "pattern of violations or conduct of alleged wrongful arrest and alleged evidence mishandling" "that would have put Blanco County on notice that different training and/or supervision was needed to avoid the incident alleged." Dkt. 9, at 9. Blanco County argues that Bous is required "to offer specific facts about the alleged nature of the training and supervision deficiencies" including "identifying the training procedure and supervision at issue, its

inadequacies, [and] how those inadequacies were the moving force behind the alleged violation ...." *Id.*

To survive Blanco County's motion to dismiss his failure-to-train claim Bous must plausibly allege that: (1) the County "was deliberately indifferent in adopting its training policy"; (2) the County's "training policy procedures were inadequate"; and (3) the County's "inadequate training policy directly caused" the alleged constitutional violations. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

There are two ways for a plaintiff to show deliberate indifference. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citing *Canton*, 489 U.S. at 386-92). Typically, a plaintiff shows deliberate indifference by demonstrating that city employees "so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." *Bryan County,* 520 U.S. at 407 (1997) (quoting *Canton*, 489 U.S. at 390). Alternatively, there is a narrow "single incident" exception. *Id.* at 397. "To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Roberts v. City of Shreveport*, 439 F.3d 287, 295 (5th Cir.

2005) (quoting *Brown v. Bryan Cnty., OK,* 219 F.3d 450, 461 (5th Cir. 2000)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson,* 563 U.S. 51, 70 (2011). Because the "standard for [municipal] fault" is a "stringent" one, "[a] pattern of similar constitutional violations by untrained employees is ordinarily" required to show deliberate indifference. *Id.* at 62 (citations and internal quotations omitted).

In this case, Bous has failed to sufficiently plead a pattern of similar constitutional violations involving improper and unethical investigative and prosecutorial techniques resulting in false arrest and imprisonment necessary to establish the deliberate indifference prong of his failure-to-train claim. Even if Bous could be said to have pursued the "single incident" exception to establish deliberate indifference, in the Fifth Circuit, the single incident exception has been cabined so as to apply essentially only to situations in which officers are provided "no training whatsoever." *See Pena*, 879 F.3d at 623-24 (making a distinction between a "complete failure to train[] ... and a failure to train in one limited area").[4] Here, Bous's complaint does not allege that McAfee, Acosta, and Schumacher received no training whatsoever. Thus, the single-incident exception to establish deliberate indifference does not apply. Because Bous has not otherwise established a pattern of deliberate indifference, he has not met the elements of his failure-to-train claim. The

---

[4] *See also Brown*, 219 F.3d at 453-54, 462 (holding the single-incident exception was satisfied where a reserve deputy, with "*no training*" from the police department applied excessive force during a car chase) (emphasis added)).

undersigned recommends that the District Court grant Blanco County's motion to dismiss Plaintiffs' failure-to-train claim.

Based on the foregoing discussion, the undersigned recommends that Blanco County's motion to dismiss Bous's *Monell* claim and failure-to-train claim, Dkt. 9, be granted and that these claims be dismissed without prejudice.

### B.    McAfee, Schumacher, and Acosta's Motion for Judgment on the Pleadings

Bous brings claims under 42 U.S.C. § 1983 against McAfee, Schumacher, and Acosta for material omissions, bad faith failure to investigate, and presentation of false testimony/evidence leading to his false arrest and detention in violation of his rights under the Fourth and Fourteenth Amendments. Dkt. 1, at 9-11. Bous also brings claims for conspiracy under 42 U.S.C. § 1983 alleging that McAfee, Schumacher, and Acosta conspired to deprive him of "rights privileges, and/or immunities guaranteed to him by the United States Constitution, including due process, equal protection under the law, and unlawful search and seizures." *Id.* The conduct giving rise to these claims includes the authorship of a probable cause affidavit that allegedly misled Judge Bray who issued the arrest warrant, seeking an arrest warrant when the defendants were aware of exculpatory evidence, attempting to disqualify and later, arrest, Bous's criminal defense attorney, pursuing a high bond based on misleading testimony and evidence, and failing to provide information to Bous's defense counsel. *Id.* at 4-9.

McAfee and Schumacher argue that they are entitled to absolute prosecutorial immunity and that Schumacher and Acosta are also entitled to immunity as a witness

insofar as Bous alleges Schumacher and Acosta offered testimony at various hearings. Dkt. 16, at 10.

### 1. Prosecutorial immunity for McAfee and Schumacher

DA McAfee and DA Investigator Schumacher move for judgment on the pleadings on the basis that all of Bous's claims against them stem from "the alleged wrongful prosecution" of Bous. Dkt. 16, at 3. They state that that there are "no allegations that McAfee took any adverse actions prior to plaintiff's arrest." *Id.* at 7. McAfee argues that he is shielded by absolute prosecutorial liability for the "actions [he] took in prosecution of [Bous], such as arguing for a higher bond, withholding evidence throughout the prosecution, or seeking to have [Bous's] defense attorney disqualified." Dkt. 16, at 3. Schumacher argues that he is also entitled to prosecutorial immunity because an investigator "performing functions on behalf of a district attorney is entitled to prosecutorial immunity" when performing quasi-judicial functions and that as McAfee's agent, he is entitled to derivative immunity. Dkt. 16, at 10. Bous responds that prosecutorial immunity inures only when prosecutors act in their prosecutorial capacity and does not extend to conduct performed in an investigatory capacity. Dkt.17, at 4-7. Further, Bous states that McAfee's conduct at issue in this suit was performed in an investigatory capacity. *Id.*

Though § 1983 "on its face admits of no defense of official immunity," the Supreme Court recognizes that Congress did not intend to abrogate immunities "well grounded in history and reason" by omission. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Qualified immunity and absolute immunity are now well-established. *Id.*

at 269. Absolute immunity is analyzed under a "functional approach" which examines whether the relevant official would have been afforded immunity at common law, identifies the functions of his office, and determines whether the "contemporary analogues should be afforded the same immunity." *Id.*  As a relevant example, it is "well-settled" that historically, prosecutors were absolutely immune in their decision to initiate criminal proceedings. *Imbler v. Pachtman*, 424 U.S. 409, 421-24, (1976). As a result, a contemporary prosecutor's decision whether to charge a criminal defendant is protected by absolute immunity. *Id.*  In contrast, a prosecutor's "investigative activities" are not entitled to absolute immunity because investigation was not "part of [a prosecutor's] traditional official functions." *Id.* at 430.

"Advocatory" activities include organizing, evaluating, and presenting already-gathered evidence, while investigatory activities include gathering and acquiring evidence. *Singleton v. Cannizzaro*, 956 F.3d 773, 783 (5th Cir. 2020) ("[I]nformation-gathering," this court has recognized, "is more analogous to investigative police work than advocatory conduct."). At its core, the advocatory function is one that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Conduct that is unrelated to the judicial phase of a prosecution, or of only attenuated relation, cannot be said to be advocatory. *Burns*, 500 U.S. at 494 ("absolute prosecutorial immunity" is only justified "for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct."). Because the timing, setting, and purpose of the alleged conduct is critical to determining whether conduct is investigatory or advocatory for the purposes of

18

absolute prosecutorial immunity, a close examination of McAfee and Schumacher's alleged conduct is warranted. [5]

      Bous alleges that DA McAfee: "vigorously defended a high bond with testimony and other evidence largely supplied by Schumacher and Acosta" arguing that Bous was "a flight risk and dangerous man"; "doggedly pursued a criminal case against Bous"; "[f]ollowing Bous' arrest … to the extent that he was not already directing the investigation—took full control of the investigation and prosecution of Bous"; instructed his investigator, Schumacher, to secure search warrants for information contained on the cellular device of Bous' criminal defense attorney, Zachary P. Hudler" and ordered the arrest of Hudler; "[d]uring the prosecution, and at the bond hearing, DA McAfee, and his office withheld critical information for months on end that established Bous' innocence"; "did not provide information to Bous' defense counsel or the state court during at least one bond hearing and throughout McAfee's prosecution of Bous"; "sought to disqualify Hudler as Bous' defense counsel"; and [d]uring multiple hearings … presented testimony and

---

[5] *See e.g.*, *Buckley*, 509 U.S. at 262 (reviewing conduct where prosecutor was alleged to have searched for a witness who would testify that a boot print found at the crime scene matched that of the defendant's boot and determining that the issue was "whether the effort to obtain definitive boot evidence linking petitioner to the crime was in the nature of acquisition of evidence or in the nature of evaluation of evidence for the purpose of initiating the criminal process. The Court framed the distinction as: "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.'" The prosecutor's search for false witness testimony fell into the latter category. (internal citations and quotations omitted)).

evidence—including the testimony of Schumacher and Acosta—that he knew to be false, all while withholding key, exculpatory evidence." Dkt. 1, at 4-5.

Bous also generally alleges that during the time McAfee pursued an arrest warrant, participated in a bond hearing, and prosecuted Bous, McAfee had access to license plate reader data indicating that Bous was not in the Johnson City area where Poole was found at the time of his suspected death, but was instead traveling out of state. *Id.* at 3, 8-9. Bous also states that McAfee had access to Bous's cell phone records confirming that he was out of the area when Poole was killed, though it's not clear at what point during the investigation or prosecution Bous alleges McAfee was aware of this particular information. *Id.* at 9. Lastly, Bous alleges that McAfee had access to witness statements predating the pursuit of the arrest warrant that confirmed that Bous informed his tenants that he would be going away for some time disproving the theory underlying the probable cause affidavit that Bous murdered Poole and left Johnson City suddenly and without warning. *Id.* at 7-8.

As to McAfee's investigator, Schumacher, Bous alleges that Acosta's probable cause affidavit stated that Schumacher was with Acosta as he investigated the facts giving rise to the probable cause affidavit and that Schumacher "[had] conversations with [Bous's] tenants." *Id.* at 5. The undersigned finds that at least some of McAfee and Schumacher's alleged conduct was performed in an investigatory, rather than advocatory, capacity and that, therefore, McAfee and Schumacher are not entitled to absolute prosecutorial immunity for their investigatory conduct.

20

As a preliminary matter, McAfee's pursuit of a criminal case against Bous; defense of a high bond; attempt to disqualify Bous's defense attorney; appearances in court as an advocate after Bous was arrested; and failure to provide information during the prosecution, specifically to Bous's attorney, fall within the advocatory category.[6] McAfee and Schumacher are entitled to prosecutorial immunity from claims arising directly from that conduct. *See Manuel v. Lehmberg*, 690 F. App'x 245, 246 (5th Cir. 2017) (holding prosecutor was immune from plaintiff's allegation that prosecutor "set an excessively high bond" to ensure that the plaintiff remained in prison); *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009) (holding that the decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity); *Burns v. Reed*, 500 U.S. 478, 492 (1991) (confirming protections for prosecutor when serving as an advocate in judicial proceedings and holding that

---

[6] Bous's complaint states that "DA McAfee's Actions likely violate *Brady v. Maryland* and Texas' *Michael Morton Act* because DA McAfee did not provide information to Bous' defense counsel or the state court during at least one bond hearing and throughout DA McAfee's prosecution of Bous." Dkt. 1, at 5. However, Bous makes no further arguments in his pleadings as to his *Brady* claim nor alleges that he requested the withheld information as required for a *Brady* claim. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Nor does Bous allege that DA McAfee's conduct falls into one of the three situations in which a *Brady* claim may arise even when a defendant does not request information. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). Those three situations are: (1) where previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured; (2) where the Government failed to accede to a defense request for disclosure of some specific kind of exculpatory evidence; (3) where the Government failed to volunteer exculpatory evidence never requested, or requested only in a general way, but only where suppression of the evidence would be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* (internal citations and quotes omitted).

appearance in court after suspect was arrested in support of application for search warrant and presentation of evidence at that hearing were protected by absolute immunity). Accordingly, the undersigned recommends that the District Court grant McAfee and Schumacher's motion for judgment on the pleadings as to Bous's claims to the extent they are based on these advocatory activities.

a.    Investigatory activities

To the extent Bous alleges that McAfee's conduct took place in an investigatory capacity either before, during, or after pursuing an arrest warrant, prosecutorial immunity does not adhere at this stage. Prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial … [including] the professional evaluation of the evidence assembled by the police and appropriate preparation for it's presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 273. By way of example, "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Id.*

In addition to searching for evidentiary support that might give a prosecutor probable cause to recommend a suspect be arrested, prosecutorial immunity is not

available when a district attorney allegedly fabricates evidence concerning an unsolved crime. *Kalina v. Fletcher,* 522 U.S. 118, 125-27 (1997). Neither is absolute immunity available when a prosecutor "[participates] in searching for and seizing evidence" and evaluates the scene of a warrantless search in order to assemble evidence. *Hoog-Watson v. Guadalupe County*, 591 F.3d 431 (5th Cir. 2009). Lastly, prosecutorial immunity is not available when a prosecutor takes the "place of law enforcement by initiating and conducting the entire investigation." *Wooten v. Roach*, 964 F.3d 395, 408 (5th Cir. 2020).

Bous alleges that McAfee was at least partially directing the investigation before his arrest, and that following his arrest, McAfee "took full control of the investigation and prosecution of Bous." Dkt. 1, at 5. Specifically, Bous claims that McAfee's investigator, Schumacher, investigated the murder and interviewed Bous's tenants alongside Acosta, and that McAfee "instructed … Schumacher, to secure search warrants for information contained on the cellular device of Bous' criminal defense attorney, Zachary P. Hudler." *Id.* These allegations allow the undersigned to infer, at least at the motion-to-dismiss stage, that McAfee participated in collecting evidence to support probable cause for the arrest warrant and as part of the general evidence-gathering stage of the proceedings after Bous was arrested. Prosecutorial immunity does not shield McAfee and Schumacher from claims arising from these alleged activities.

The undersigned finds that Bous adequately alleges that McAfee and Schumacher performed investigative functions that are not covered by absolute

prosecutorial immunity. In short, they are alleged to have fulfilled fact-finding roles generally fulfilled by law enforcement and would only be entitled to qualified immunity available to law enforcement officers. *Wooten,* 964 F.3d at 408. The undersigned, therefore, recommends that their motion for judgment on the pleadings be denied as to Bous's claims based on these actions.

b.    Probable cause evidence presentation

In addition to McAfee's allegations concerning McAfee and Schumacher's evidence-gathering activities, Bous also alleges that McAfee had a role in presenting evidence in pursuit of the arrest warrant. Dkt. 1, at 6-9. These allegations necessitate closer inspection. Though Bous states Acosta authored the probable cause affidavit underlying the arrest warrant, Bous alleges that all the defendants, including McAfee, withheld, or misrepresented exculpatory evidence while seeking an arrest warrant. *Id.* This evidence includes witness statements concerning sightings of Poole at a time when license plate reader data placed Bous out of the area, as well as witness statements concerning advance knowledge of Bous's pre-planned trip that undermined the probable cause theory that Bous left town suddenly after killing Poole. *Id.*

For the purpose of the prosecutorial immunity inquiry, the pursuit of an arrest warrant is thought to be "further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." *Malley v. Briggs*, 475 U.S. 335, 342 (1986); *Kalina v. Fletcher,* 522 U.S. 118, 128 (1997). In *Kalina*, a prosecutor attested to facts recited in a "Certification for Determination of Probable

24

Cause." 522 U.S. at 121. The certification contained two inaccurate factual statements, the first representing that respondent did not have permission to enter school grounds, when in fact he did, and the second, representing that the respondent had been identified as someone who was in possession of a stolen computer, when in fact he had not been identified. *Id.* As in this case, the respondent in *Kalina* was arrested on the basis of inaccurate factual statements and spent time in jail before the charges were dropped. *Id.* The prosecutor in *Kalina* argued that "the execution of the certificate was just one incident in a presentation that, viewed as a whole, was the work of an advocate and was integral to the initiation of the prosecution." *Id.* at 130. The Court accepted that characterization of her conduct as to drafting the certificate, her determination regarding the strength of the evidence justifying a probable cause finding, her selection of facts to include as evidentiary support of the probable cause finding, her decision to file charges, and her presentation of the information and motion to the court. *Id.* Each of those matters involved her professional judgment and gave rise to prosecutorial immunity. *Id.* However, to the extent the certification made representations as to the truth or falsity of factual statements, the Court found that testifying about facts is the function of a witness, not an advocate. *Id.* at 131. The prosecutor's conduct in giving sworn testimony misrepresenting factual statements in the context of an application for an arrest warrant was not covered by prosecutorial immunity. *Id.*

Viewing Bous's allegations in the light most favorable to him, as the undersigned must, McAfee's conduct in the presentation and alleged

misrepresentation of evidence underlying the probable cause affidavit rises to the level of making determinations about the truth or falsity of factual statements made by witnesses to Acosta and DA investigator Schumacher. If, as Bous alleges, Schumacher and Acosta were told by tenants that Bous notified them in advance of his scheduled departure, yet the probable cause affidavit represented that Bous left suddenly without telling anyone, that representation tends to undermine the truth of the tenants' statements and represents an impermissible exercise of judgment as to the truth or falsity of factual statements. *See also Spivey v. Robertson,* 197 F.3d 772, 776 (5th Cir. 1999) (stating that a DA who manufactures evidence for the police to place in an affidavit for probable cause acts as a complaining witness and is not entitled to prosecutorial immunity). McAfee does not have absolute prosecutorial immunity from claims arising from his conduct in relation to representations in the probable cause affidavit in pursuit of an arrest warrant.

Based on the foregoing, McAfee is not entitled to prosecutorial immunity, and as a result, Schumacher is not entitled to derivative prosecutorial immunity as McAfee's agent. Their motion for judgment on the pleadings should be denied as to these allegations as well.

### 2.    Witness immunity for Schumacher and Acosta

The undersigned next turns to Schumacher and Acosta's argument that they are entitled to witness immunity against claims based on their testimony at various pretrial hearings. Dkt. 16, at 10.  In *Briscoe v. LaHue,* the Supreme Court held that a police officer has absolute immunity from claims under § 1983 arising from an

officer's testimony at a criminal trial. 460 U.S. 325, 341 (1983). However, the Court noted that the question before it in that case was: "Whether a police officer who commits perjury during a state court criminal trial should be granted absolute immunity from civil liability under 42 U.S.C. § 1983." *Id.* at 328. The petition at issue "[did] not raise the question of immunity for testimony at pretrial proceedings such as probable cause hearings, nor [did] petitioners' brief discuss whether the same immunity considerations that apply to trial testimony also apply to testimony at probable cause hearings." *Id. Briscoe,* therefore, did not "decide whether respondent … is entitled to absolute immunity for allegedly false testimony at two probable cause hearings regarding petitioner," so *Briscoe* is not dispositive here. *Id.*

The issue of officer immunity against claims arising from testimony at pretrial hearings has been reviewed at least twice in the Fifth Circuit. In *Moore v. McDonald*, the Fifth Circuit found that a deputy sheriff was protected by absolute witness immunity from claims arising from perjured testimony at a pretrial suppression hearing. 30 F.3d 616, 618 (5th Cir. 1994). In contrast, in *Wheeler v. Cosden Oil and Chem. Co.,* the court held that officers do not have absolute immunity from § 1983 claims when they perjure themselves at pretrial probable cause hearings. 734 F.2d 254, 261 (5th Cir.), *modified on other grounds,* 744 F.2d 1131 (1984). The disparate outcome of these two cases lies in the adversarial nature of a suppression hearing. The court in *Moore* observed: "Testimony at adversarial pretrial suppression hearings is distinguishable from testimony at nonadversarial probable cause hearings because

[i]n adversarial pretrial proceedings, as in trials, the witness testifies in court, under oath, under the supervision of the presiding judge and is subject to criminal prosecution for perjury." 30 F.3d at 619-20 (internal citations and quotations omitted).

Bous's allegations as to Schumacher are that Schumacher testified to information he knew to be false and supplied evidence at a bond hearing and "multiple [other] hearings." Dkt. 1, at 4-6. Bous's allegations against Acosta stem from Acosta's testimony as to probable cause supporting the warrant to arrest Bous. *Id.* at 4. Schumacher and Acosta's testimony are alleged to have been given pretrial since charges were dismissed before Bous ever went to trial. Dkt. 1, at 4. The undersigned finds that, to the extent Acosta and Schumacher testified at hearings of an adversarial nature in court, under oath, under the supervision of a presiding judge, and subject to cross examination, witness immunity applies. Conversely, Schumacher and Acosta are not immune from claims based on perjured testimony in hearings of a nonadversarial nature, such as a probable cause hearing.

### 3.    Conspiracy

As to Bous's conspiracy claims, McAfee and Schumacher argue that the complaint alleges that all of the defendants are employees or agents of Blanco County and that members of the same entity cannot conspire with one another. Dkts. 16, at 10; 1, at 1. Acosta joins McAfee and Schumacher in seeking dismissal of the conspiracy claim. Dkt. 16, at 11. In his response Bous writes that if defendants agree that they are all employees or agents of the same entity, then "Defendants are correct

and there can be no civil conspiracy." Dkt. 17, at 8. McAfee and Schumacher's reply states that they "do not concede that they are all employed by a single entity, Blanco County, Texas," "[h]owever, Plaintiff's allegations which the Court must take as true for the purposes of determining dismissal based on the pleadings is that all Defendants are employees or agents of Blanco County [so] Plaintiff's conspiracy claim fails." Dkt. 18, at 1.

The undersigned finds that, as pleaded, Bous does not state a valid claim for conspiracy. The intracorporate conspiracy doctrine bars conspiracy claims if the actors are part of the same department or unit. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th. Cir. 1994). The undersigned recommends that Bous's conspiracy claims against McAfee, Schumacher, and Acosta be dismissed without prejudice.

### C.   Bous's Alternative Request for Leave to Amend

In his responses to Blanco County's motion to dismiss, Dkt. 9, and McAfee and Schumacher's motion for judgment on the pleadings, Dkt. 16, Bous requests leave to amend in the event the District Court finds that there are deficiencies in his pleadings and grants either motion. Dkts. 11, at 7; 17, at 8-9. Should the District Court dismiss Bous's claims, and if Bous still wants to amend his pleadings, he should file a motion for leave to amend pursuant to Local Rules CV-15(b) and CV-7(b) governing amended pleadings, which state that that "[w]hen a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave." W.D. Tex. Loc. R. CV-15(b); *id.* CV-7(b).

## IV.     RECOMMENDATION

### A.     Blanco County's Motion to Dismiss, Dkt. 9

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** Blanco County's motion to dismiss, Dkt. 9, and **DISMISS WITHOUT PREJUDICE** Bous's claims as to Blanco County.

### B.     McAfee, Schumacher, and Acosta's Motion for Judgment on the Pleadings, Dkt. 16

The undersigned **RECOMMENDS** that the District Court **DENY IN PART** and **GRANT IN PART** McAfee, Schumacher, and Acosta's motion for judgment on the pleadings, Dkt. 16. In particular, the undersigned **RECOMMENDS** that the District Court **GRANT** McAfee, Schumacher, and Acosta's motion for judgment on the pleadings with respect to Bous's conspiracy claim (Cause of Action VI.D, Dkt. 1, at 12), and recommends that the District Court **DISMISS WITHOUT PREJUDICE** that claim.

The undersigned further **RECOMMENDS** that the District Court **GRANT** McAfee and Shumacher's motion for judgment on the pleadings as to Bous's claims of false arrest and material omissions (Cause of Action VI.A, Dkt. 1, at 9-10), bad faith failure to investigate (Cause of Action VI.B, Dkt. 1, at 10-11), and presentation of false testimony/evidence (Cause of Action VI.C, Dkt. 1, at 11), to the extent those claims are based on (1) the pursuit of a criminal case against Bous, (2) McAfee's defense of a high bond, (2) McAfee's attempt to disqualify Bous's defense attorney, (3) appearances by McAfee in judicial proceedings as an advocate after Bous was arrested, and (4) failure to provide information during the prosecution, specifically to

Bous's attorney (except to the extent Bous states a claim for violations of *Brady*). The undersigned recommends that the District Court **DISMISS WITH PREJUDICE** these claims to the extent they are based on this conduct, as McAfee and Schumacher possess absolute prosecutorial immunity for these activities and further amendment will not cure this defect.

The undersigned further **RECOMMENDS** that the District Court **DENY** McAfee and Shumacher's motion for judgment on the pleadings as to Bous's claims of false arrest and material omissions (Cause of Action VI.A, Dkt. 1, at 9-10), bad faith failure to investigate (Cause of Action VI.B, Dkt. 1, at 10-11), and presentation of false testimony/evidence (Cause of Action VI.C, Dkt. 1, at 11), to the extent these claims are based on (1) McAfee controlling the investigation before or after Bous's arrest; (2) McAfee directing Schumacher to investigate the murder for which Bous was charged and interview witnesses before Bous was arrested; (3) McAfee directing Schumacher to obtain search warrants; or (4) McAfee or Schumacher making representations at the probable cause hearing that required determinations as to the truth or falsity of factual witness statements.

The undersigned further **RECOMMENDS** that the District Court, on the basis of witness immunity, **GRANT** the individual defendants' motion for judgment on the pleadings, Dkt. 16, with respect to Bous's claim against Defendants Schumacher and Acosta based on alleged false testimony (Cause of Action VI.C, Dkt. 1, at 11), to the extent it relies on testimony given at hearings of an adversarial nature

in court, under oath, under the supervision of a presiding judge, and subject to cross examination.

Lastly, the undersigned **RECOMMENDS** that the District Court **DENY** the individual defendants' motion for judgment on the pleadings, Dkt. 16, in all other respects.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.   *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED January 24, 2023.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE